IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 1324 |
| ) | |
| CAROLYN W. COLVIN,[1] Acting ) | Magistrate Judge Finnegan |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Thomas Jackson seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 416, 423(d). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For reasons discussed below, the Court now grants Plaintiff's motion, denies the Commissioner's motion, and remands the case for further proceedings.

## BACKGROUND

Plaintiff was born on August 4, 1957, and has a high school diploma. (R. 115, 794). His past relevant work dates to 1993 and includes customer service

---

[1] Ms. Colvin became Acting Commissioner of Social Security on February 14, 2013, and is substituted in as Defendant pursuant to Federal Rule of Civil Procedure 25(d)(1).

manager and driver for an armored truck company. Most recently, Plaintiff worked as a stationary engineer for a commercial building, but he quit that job on March 10, 2006 due to his medical conditions. (R. 135, 797). In that regard, Plaintiff applied for DIB on March 11, 2008, alleging that he became disabled on March 10, 2006 due to neck, shoulder and back problems. (R. 115, 134). The Social Security Administration denied the application initially on June 18, 2008, and again upon reconsideration on September 11, 2008. (R. 43-44). Plaintiff filed a timely request for hearing and appeared before Administrative Law Judge Robert T. Karmgard (the "ALJ") on May 19, 2009. (R. 791). The ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from vocational expert William Newman (the "VE").

Several months later, on January 29, 2010, the ALJ found that Plaintiff's degenerative disease of the cervical spine, asthma, hypertension, sinusitis and obesity are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 50). After discussing the medical and testimonial evidence in detail, the ALJ determined that Plaintiff has the capacity to perform sedentary work with the following restrictions: he can occasionally lift/carry up to 10 pounds and frequently lift/carry lighter items such as hand tools; he can occasionally push/pull up to 10 pounds and frequently push/pull lighter items; he cannot perform overhead work; he can frequently perform fine manipulative tasks such as fingering/pinching; he can stand/walk, with normal breaks, for 2 hours in an 8-hour workday, but he cannot stand or walk for more than one hour continuously; he can sit, with normal

breaks, for 6 hours a day, but not more than one hour continuously; he cannot climb ladders, ropes or scaffolds; he can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; he must avoid concentrated exposure to fumes/odors, dusts, gasses and other pulmonary irritants; and he must avoid exposure to hazards, such as unprotected heights and dangerous, moving machinery. (R. 51).

Based on this stated residual functional capacity ("RFC"), the ALJ accepted the VE's testimony that Plaintiff remains capable of performing his past work as a customer service manager, as well as some 62,500 customer complaint clerk jobs available in the regional economy. (R. 25-56). The ALJ thus concluded that Plaintiff is not disabled within the meaning of the Social Security Act, and is not entitled to benefits. The Appeals Council denied Plaintiff's request for review on October 14, 2011, (R. 3-5), and Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner.

## DISCUSSION

### A.  Standard of Review

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nor may it "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)

3

(quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court's task is to determine whether the ALJ's decision is supported by substantial evidence, which is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Skinner*, 478 F.3d at 841).

In making this determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

### B.  Five-Step Inquiry

To recover DIB under Title II of the Social Security Act, a claimant must establish that he is disabled within the meaning of the Act. *Crawford v. Astrue*, 633 F. Supp. 2d 618, 630 (N.D. Ill. 2009). A person is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Crawford*, 633 F. Supp. 2d at 630; *Strocchia v. Astrue*, No. 08 C 2017, 2009 WL 2992549, at *14 (N.D. Ill. Sept. 16, 2009). In determining whether a claimant suffers from a disability, the ALJ conducts a

standard five-step inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? See 20 C.F.R. §§ 404.1520, 416.920; Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000).

**C. Analysis**

Plaintiff has identified a variety of alleged errors in this case, two of which support a remand: (1) the ALJ failed to consider Plaintiff's obesity in determining his RFC; and (2) the ALJ made a flawed credibility assessment.

**1. Obesity**

The Seventh Circuit has made it clear that "[a]n ALJ must factor in obesity when determining the aggregate impact of an applicant's impairments." Arnett v. Astrue, 676 F.3d 586, 593 (7th Cir. 2012). Here, the ALJ found Plaintiff's obesity to be a severe impairment at step two of the analysis, (R. 50), but failed to indicate whether that impairment has any impact on his ability to work. Defendant concedes that the ALJ "could have done a better job by explaining the impact of Plaintiff's obesity," but cites Dornseif v. Astrue, No. 12-2408, 2013 WL 150121 (7th Cir. Jan. 15, 2013), for the proposition that the failure to do so was harmless. (Doc. 35, at 19). The plaintiff in Dornseif "did not mention her obesity at any juncture of her application process," and then raised the issue for the first time in her appeal to the district court. Id. at *2; Dornseif v. Astrue, No. 11 C 4335, 2012 WL 1441770, at *9 (N.D. Ill. Apr. 26, 2012). The Seventh Circuit held

5

that the "ALJ's failure to explicitly consider an applicant's obesity" in such circumstances was harmless. *Id.* Given that Plaintiff was diagnosed with obesity, which the ALJ found to be a severe impairment, *Dornseif* is wholly inapposite. There is no question that the ALJ needed to consider the effects of obesity in determining Plaintiff's RFC, and he neglected to do so.

Defendant attempts to avoid this result by arguing that the record contains "only two notations that arguably suggest that Plaintiff's obesity could [a]ffect [his] functioning." (Doc. 35, at 20). The first is a May 24, 2008, Internal Medicine Consultative Examination report, in which Mahesh Shah, M.D., diagnosed Plaintiff with a history of cervical disc disease and asthma, and noted that "[o]besity . . . can make the[se] problems worse." (R. 444). The second record is a December 2009 note from treating physician Daniel O'Malley, D.O., stating that Plaintiff complained of obesity and had symptoms "associated with depression, joint pains and knee problems." (Doc. 699). Defendant discounts both records, noting first that Dr. Shah "was not in a position to document the functional impact of Plaintiff's obesity, which he could only briefly observe," and did not "affirmatively" conclude that obesity exacerbates Plaintiff's symptoms. (Doc. 35, at 20). Defendant also maintains that the symptoms identified by Dr. O'Malley "do not apparently show up elsewhere in the record with any prevalence." (*Id.*). In Defendant's view, since neither record indicates that obesity actually has impacted Plaintiff's functioning, "no harm or prejudice result[ed] from the ALJ's minimal reference to obesity." (*Id.*).

6

The problem for Defendant is that the ALJ did not mention either piece of evidence in his decision, or offer any explanation as to why he disregarded these findings in determining Plaintiff's RFC. *See Phillips v. Astrue*, 413 Fed. Appx. 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."). As the *Arnett* court observed, "[i]f the ALJ thought that [Plaintiff's] obesity has not resulted in limitations on h[is] ability to work, he should have explained how he reached that conclusion." 676 F.3d at 593. Indeed, the ALJ's duty in this regard exists even where Plaintiff "failed to provide evidence of limitations" relating to his obesity. *Id*. The ALJ's failure to indicate whether and how Plaintiff's obesity impacts his ability to function is reversible error. *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("The gravest error . . . is the failure to consider the bearing of Rider's extreme obesity. The administrative law judge mentioned in passing that it is a severe impairment but did not consider its significance in relation to Rider's knee.").

Though Defendant admitted that the ALJ's discussion of this issue was lacking, the Court scheduled a hearing to allow additional argument. In anticipation of that hearing, Defendant asked the Court to consider a new Seventh Circuit case, *Pepper v. Colvin*, __ F.3d __, 2013 WL 1338123 (7th Cir. 2013). There, the court reaffirmed the principle that an ALJ's failure to discuss a claimant's functional limitations resulting from obesity may be a harmless error "when the RFC is based on limitations identified by doctors who specifically

7

noted obesity as a contributing factor to the exacerbation of other impairments." *Id.* at *11.

Notably, Defendant has not directed the Court to any specific limitations that were identified by doctors who considered Plaintiff's obesity, and which the ALJ then incorporated into his RFC finding. The ALJ expressly rejected Dr. O'Malley's opinion, finding that his observations were "not consistent with the overall record, and cannot be given persuasive [authority]." (R. 54). With respect to Dr. Shah, the ALJ did not assign his opinion any specific weight at all, or indicate how he factored the doctor's findings into the RFC. The same is true of the June 10, 2008 RFC completed by Francis Vincent, M.D. Significantly, Dr. Vincent could not have considered Dr. O'Malley's December 2009 assessment that Plaintiff's obesity has resulted in symptoms "associated with depression, joint pains and knee problems." (Doc. 699).

On the record presented, the Court finds that the ALJ failed to properly evaluate the aggregate effect of Plaintiff's obesity along with his other impairments in determining his RFC. The case must therefore be remanded for further consideration of this issue.

### 2. Credibility Assessment

On remand, the ALJ should also revisit his credibility determination. In assessing a claimant's credibility, an ALJ must first determine whether the symptoms are supported by medical evidence. *See* SSR 96-7p, at 2; *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the

individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." Id. See also 20 C.F.R. § 404.1529; *Carradine v. Barnhart*, 360 F.3d 751, 775 (7th Cir. 2004). Because hearing officers are in the best position to evaluate a witness's credibility, their assessment should be reversed only if "patently wrong." *Castile*, 617 F.3d at 929; *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

After discussing in detail Plaintiff's testimony and the medical evidence, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 55). The Seventh Circuit has repeatedly criticized this template as "unhelpful" and "meaningless boilerplate," which "adds nothing" to a credibility analysis. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). This language "implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards." *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012).

Defendant concedes that "the ALJ could have done a better job of explaining the basis for his credibility findings," but argues that "the ALJ's discussion of the evidence shows that he considered relevant factors in reaching the credibility determination." (Doc. 35, at 17, 18). To be sure, the use of the

9

boilerplate template does not alone provide a basis for remand as long as the ALJ provides a detailed discussion of the plaintiff's symptoms and testimony, and the reasons he did not find the plaintiff's statements fully credible. *See, e.g., Richison v. Astrue*, 462 Fed. App. 622, 625 (7th Cir. 2012) (the boilerplate language is "inadequate, by itself, to support a credibility finding," but decision affirmed where "the ALJ said more."). Here, however, the ALJ did not give any reasons, aside from the boilerplate, for finding Plaintiff's statements less than fully credible.

This fact distinguishes the case from *Pepper*, where "[i]mmediately following the use of boilerplate, the ALJ provided a paragraph discussing [the plaintiff's] testimony in conjunction with the RFC statement." 2013 WL 1338123, at *14. As part of that discussion, the ALJ acknowledged the plaintiff's testimony that she cannot sit/stand for extended periods of time or engage in excessive bending, and "noted that [the] RFC did not require either." *Id*. After reviewing the testimony and medical evidence, "[t]he ALJ concluded that, taken together, the amount of daily activities [the plaintiff] performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in [the plaintiff's] medical records regarding her ability to engage in activities of daily living undermined [the plaintiff's] credibility when describing her subjective complaints of pain and disability." *Id*. at *15.

Defendant argues that as in *Pepper*, the ALJ in this case discussed all of the relevant testimonial and medical evidence, which suffices to allow the Court to trace his reasoning as to Plaintiff's credibility. The Court disagrees. The ALJ

10

provided no explanation whatsoever as to which portions of Plaintiff's testimony he found not credible, even in a broad or general sense. He drew no connections between that testimony, the medical evidence and the RFC, and the decision is not "sufficiently specific to make clear to [Plaintiff] and to any subsequent reviewers the weight the ALJ gave to [Plaintiff's] statements and the reasons for that weight." *Sopear Chan Som v. Astrue*, No. 10 C 1808, 2012 WL 1409509, at *15 (N.D. Ill. Apr. 19, 2012).

Given that the ALJ's credibility determination consists entirely of the "hackneyed" boilerplate language, that determination is not supported by substantial evidence and must be reversed. *Shauger*, 675 F.3d at 696.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 23) is granted, and Defendant's Motion for Summary Judgment is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: April 11, 2013

_____
SHEILA FINNEGAN
United States Magistrate Judge